IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICK KING,** | : | **Civil No. 1:15-CV-00159** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MANSFIELD UNIVERSITY OF** | : | |
| **PENNSYLVANIA, THE** | : | |
| **PENNSYLVANIA STATE SYSTEM** | : | |
| **OF HIGHER EDUCATION, JOHN** | : | |
| **HALSTED, and CHRISTINE** | : | |
| **SHEGAN,** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

In this civil action, Plaintiff alleges that a Mansfield University maintenance worker sexually harassed and assaulted him while he was a student and employee of the university, and that school officials and campus police did not properly record, investigate, and act upon his complaints. Plaintiff brings state law discrimination claims pursuant to the Pennsylvania Human Relations Act, 43 P.S. §§ 951-953, and Pennsylvania Fair Educational Opportunities Act, 24 P.S. §§ 5001-5010, as well as a § 1983 claim for an equal protection violation under the Fourteenth Amendment. Plaintiff also alleges that Defendants violated the Criminal History Record Information Act, 18 Pa. Cons. Stat. § 9101, by not maintaining any records of his sexual harassment complaints.

Presently before the court is Defendants' motion for partial judgment on the pleadings as to Counts I, II, and VI. For the following reasons, Defendants' motion will be granted in part and denied in part.

## I.   Background[1]

### A.   Facts

In January of 2001, Patrick King ("Plaintiff") enrolled at Mansfield University ("Mansfield"), which is part of the Pennsylvania State System of Higher Education ("PASSHE"). (Doc. 1-1, ¶¶ 12, 15.) Plaintiff also worked in the student activities office in a work-study program. (*Id.* at ¶ 16.) According to the complaint, in June of 2001, John Estep ("Estep"), a maintenance worker for Mansfield, sent Plaintiff an email asking about Plaintiff's sexual orientation. (*Id*. at ¶¶ 18-20.) Despite Plaintiff's refusal of Estep's sexual advance, Estep continued to email Plaintiff and also called his home frequently. (*Id*. at ¶¶ 21-22.)

In the summer of 2001, Estep orchestrated a meeting with Plaintiff at the student activities building. (*Id.* at ¶ 23.) During this meeting, Estep asked to see Plaintiff's penis, then blocked Plaintiff's exit and asked him to have sex in a nearby closet. (*Id*.) Once again, Plaintiff rejected Estep's sexual advances. (*Id.*) After the incident, Plaintiff met with Mansfield's Vice-President of Student

---

[1] The facts of the case are largely undisputed, and the court recites the relevant facts from the complaint.

Affairs, Joseph Maresco ("Maresco"), provided him copies of Estep's emails, and officially complained of Estep's sexual advances. (*Id*. at ¶¶ 24-25.) Plaintiff alleges that Maresco never forwarded the emails to Human Resources, which also never contacted him regarding Estep's conduct. (*Id.* at ¶¶ 27-28.)

Estep continued to pursue Plaintiff on Mansfield's campus, offering him gay pornography and even trying to forcibly enter a bathroom stall occupied by Plaintiff. (*Id*. at ¶¶ 30, 32-33.) On one occasion, Estep grabbed Plaintiff's testicles and caused him sever pain.  (*Id*. at ¶ 35.)

Plaintiff alleges that Estep's persistent sexual harassment caused him severe depression which eventually culminated in a "complete mental breakdown." (*Id*. at ¶¶ 38-39.) Plaintiff underwent treatment for his depression, but it did not alleviate his symptoms and his academic performance declined. (*Id*. at ¶¶ 40-45.)

In April of 2004, two Mansfield professors urged Plaintiff to report Estep's sexual harassment and assault to the Mansfield University Police Department (the "Police Department"), which he did. (*Id*. at ¶ 48.) A day or so later, the Police Department called Plaintiff for some follow-up questions, but did not take any further action. (*Id.* at ¶ 49.) Eventually, Plaintiff was referred back to Mansfield's Human Resources director, who assured Plaintiff that his complaints would be promptly investigated. (*Id*. at ¶¶ 52-57.) Shortly thereafter, the Human Resources

director retired from Mansfield, but did not forward his complaint or order a thorough investigation. (*Id.* at ¶ 57.)

### B.   Procedural History

Plaintiff initially filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") alleging that Mansfield failed to adequately accommodate his debilitating depression which caused his grades to drop. (*See King I,* 2014 WL 3734551 at *6.) Plaintiff dual-filed the PHRC complaint with the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.*) On May 16, 2005, Plaintiff amended his PHRC complaint to include the sexual harassment by Estep. (*Id.*) On August 12, 2010, the PHRC determined that Plaintiff's discrimination claims lacked probable cause. (*Id.*) On March 8, 2011, the EEOC sent Plaintiff a "right to sue" letter after it adopted the PHRC's findings. (*Id.*)

Plaintiff initiated his first federal action by filing a complaint in the Middle District of Pennsylvania on June 9, 2011. (*See King v. Mansfield Univ.*, Civ. No. 11-cv-1112, 2014 WL 3734551 (M.D. Pa. July 28, 2014) ("*King I*"), Doc. 1.) After amending his complaint, Plaintiff alleged that he endured a hostile work environment because Mansfield did not promptly investigate and address Estep's alleged misconduct, which violated Title VII of the Civil Rights Act of 1964, and that Mansfield did not properly accommodate his resulting depression, which violated Title II of the Americans with Disabilities Act ("ADA") as well as Section

504 of the Rehabilitation Act of 1973 ("RA"). (*King I*, 2014 WL 3734551 at *6.)

Plaintiff also alleged violations of state law pursuant to the Pennsylvania Human

Relations Act ("PHRA") and the Pennsylvania Fair Educational Opportunities Act

("PFEOA"). (*Id.* at *14.)

Defendants answered Plaintiff's amended complaint on August 2, 2013.

(*Id.* at *6.) Once discovery closed, Defendants moved for summary judgment on

the grounds that Title VII as well as Plaintiff's RA and ADA claims were barred

by the statute of limitations. (*Id.*) The court granted summary judgment in favor of

Defendants. (*Id.* at *11). As to the Title VII claim, the court held that the statute of

limitations had expired and Plaintiff did not demonstrate that equitable tolling

applied under federal law. (*Id.*) The court also held that Plaintiff's ADA and RA

claims were similarly time barred by the statute of limitations which could not be

equitably tolled because Plaintiff presented no evidence that Defendant thwarted

his claims by fraud or other concealing conduct.[2] (*Id.* at *12-13.) The court rejected

Plaintiff's argument that the statute of limitations had been tolled as soon as he

filed a discrimination complaint with the PHRC because neither the ADA nor RA

require that administrative remedies be exhausted before discrimination claims are

---

[2] The court considered and applied Pennsylvania's statute of limitations and equitable tolling jurisprudence as applied to Plaintiff's ADA and RA claims because those Acts look to the "forum state's statute of limitations for personal injury actions." *King I*, 2014 WL 3734551 at *12. Neither claim is presently before this court nor did Plaintiff argue that the statute of limitations should be tolled because of mental distress or anxiety, which is the basis of his equitable tolling argument for his PHRA and PFEOA claims.

pursued in court. (*Id.* at *13-14.) The court then declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismissed them pursuant to its discretionary power under 28 U.S.C. § 1367. (*Id.*)

After dismissal in federal court, Plaintiff filed state law discrimination claims as well as a § 1983 claim alleging an equal protection violation in the Court of Common Pleas of Dauphin County. (Doc. 19, p. 1 of 23.) As previously stated, Plaintiff alleged that Estep's sexual harassment and assault created a hostile work environment in violation of the Pennsylvania Human Relations Act ("PHRA") ("Count I") as well as a hostile education environment which violated the Pennsylvania Fair Educational Opportunities Act ("PFEOA") ("Count II"). (Doc. 18, p. 6 of 24.) Plaintiff further claimed that Mansfield failed to accommodate his resulting depression ("Count III"), which in turn created a hostile education environment ("Count IV"), both violations of the PFEOA. (*Id.*) Pursuant to 42 U.S.C. § 1983 ("Count V"), Plaintiff alleged that President Halstead ("Halstead") and Christine Shegan ("Shegan"), Chief of the Police Department, violated his civil rights and denied him equal protection of the laws because they treated his complaint of sexual harassment and assault differently from other Mansfield students. (*Id.* at p. 7 of 24.) Plaintiff also claimed that Mansfield, PASSHE, and Shegan violated Pennsylvania's Criminal History Record Information Act

("CHRIA") ("Count VI") by failing to record Plaintiff's complaints about Estep's alleged sexual misconduct. (*Id.*)

On January 23, 2015, Defendants removed the action to federal court. (Doc. 1.) On August 5, 2015, the court denied Plaintiff's motion to remand back to state court. (Doc. 12.). Defendants then moved for partial judgment on the pleadings as to Counts I, II, and VI. (Doc. 17). Pursuant to Federal Rule of Civil Procedure 12(c), all pleadings have been filed and are closed. Both parties have filed briefs with the court (Docs. 18-20), and therefore, Defendants' motion is ripe for disposition.

## II.   <u>Legal Standard</u>

Any party may seek judgment on the pleadings once they are closed "but early enough not to delay trial." Fed. R. Civ. P. 12(c). Such motions "will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Sprague v. Am. Bar Ass'n.*, Civ. No. 01-cv-0382, 2001 WL 1450606, *1 (E.D. Pa. 2001) (quoting *Soc. Hill Civic Ass'n. v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)). In considering a motion for judgment on the pleadings, the court must view the facts alleged in the pleadings as true and draw any inferences therefrom in the light most favorable to the non-movant. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005).

## III.   **Discussion**

Defendants argue that they are entitled to judgment on the pleadings as to Counts I and II because the doctrine of collateral estoppel bars Plaintiff's state law discrimination claims. They contend that such a conclusion is inescapable based on the court's summary judgment ruling in *King I*, which held that Plaintiff's federal discrimination claims were untimely and that the statute of limitations could not be tolled under federal law based upon the filing date of Plaintiff's PHRC and EEOC complaints. Plaintiff argues in response that his PHRA and PFEOA claims are not collaterally estopped because the issues raised in the two cases are not identical.

As to Count VI, Defendants argue that Plaintiff has failed to state a legal claim because CHRIA does not create a private cause of action for failing to create and retain an investigative record. Plaintiff argues that his complaints to the Police Department should be considered criminal history record information, or, alternatively, an original record of entry akin to a police blotter, and therefore his claim that Defendants failed to create and accurately maintain information about Estep's alleged sexual misconduct is cognizable under CHRIA.

 The court will address each argument in turn.

### A.   **Collateral Estoppel**

The doctrine of collateral estoppel bars the pursuit of a claim where "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3)

the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Anspach ex rel. Anspach v. City of Phila.*, 380 F. App'x 180, 183 (3d Cir. 2010) (quoting *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995)). If these factors are met, then the court's previous ruling "may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (internal citations omitted). Collateral estoppel promotes judicial efficiency, fairness, and spares "parties of the cost and vexation of multiple lawsuits." *Id.* A claim is not collaterally estopped unless the opposing party had a "full and fair opportunity to litigate that issue in the earlier case." *Id.* at 95.

An issue is identical if there is "substantial overlap between the evidence and or argument to be advanced in the two proceedings," if the court will apply the same rule of law, discovery would be duplicated or at least "overlap" with the first proceeding, and if the claims are closely related. *Morgan v. Covington Twp.*, Civ. No. 09-cv-0651, 2013 WL 2249298, *6 (M.D. Pa. May 22, 2013) (quoting Restatement (Second) of Judgments § 27 cmt. c (1982)). In addition to these factors, courts will also consider "whether the party being precluded had a full and fair opportunity to litigate the issue in question in the prior action and whether the issue was determined by a valid and final judgment." *Anspach v. City of Phila.*,

630 F. Supp. 2d 488, 491 (E.D. Pa. 2008) (internal quotation marks omitted) (quoting *Jean Alexander Cosmetics, Inc. v. L'oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006)). A court should reject collateral estoppel arguments if there is any doubt as to the doctrine's applicability. *Id.*

The facts and evidence substantially overlap between *King I* and the present case. Plaintiff raises no new facts which were unknown to the parties or to the court in the prior litigation. Furthermore, the claims are closely related because the underlying conduct forms the basis of Plaintiff's federal and state discrimination claims in both cases. The alleged discriminatory conduct occurred prior to 2004 and any additional discovery in this case would certainly overlap and duplicate the extensive discovery of *King I*.[3] Nonetheless, Plaintiff argues that the same rules of law do not apply and that his PHRA and PFEOA claims are distinguishable because the court must apply Pennsylvania's equitable tolling doctrine as opposed to federal law, which the court ruled was a bar to his federal discrimination claims in *King I*.

However, Plaintiff cannot evade the doctrine of collateral estoppel by asserting causes of action predicated on state law as opposed to federal law. Collateral estoppel applies if a court issues a decision as to any "issue of fact or

---

[3] In *King I*, the court dismissed Count VIII of the complaint, a § 1983 claim, which was filed against two fictitiously named defendants because "[d]espite the lengthy period of discovery that ha[d] been conducted in [the] matter, which Plaintiff unsuccessfully cite[d] as a basis for retaining jurisdiction over his state law claims, the true identities of these individuals ha[d] not been made known." *King I*, 2014 WL 3734551 at *1 n.1.

law necessary to its judgment" in prior litigation, even if the same facts are now raised in a different cause of action. *Allen*, 449 U.S. at 94 (citation omitted). In the previous case, Plaintiff admitted that his PHRC complaint, concurrently filed with the EEOC, was untimely, but argued that the statute of limitations should have been equitably tolled because Mansfield's student handbook and its non-discrimination policy did not satisfy Title VII's posting requirements. *King I*, 2014 WL 3734551 at *11. The court rejected this argument and held that Plaintiff could not show that Defendants deceived, manipulated, misled, or engaged in other misconduct that justified equitable relief under federal law. *Id.*

In the present case, Plaintiff argues that equitable tolling applies because he was incapacitated by depression after Estep sexually harassed and assaulted him, whereas in *King I,* Plaintiff argued that he had defective notice of administrative filing deadlines. Without citing a binding Pennsylvania case, Plaintiff urges the court to hold that mental distress or incapacity tolls the statute of limitations for PHRA and PFEOA claims even without evidence that Defendants deceived, manipulated, coerced, or engaged in any misconduct that caused Plaintiff to forfeit his legal remedies for Estep's alleged sexual misconduct. (*See* Doc. 19, p. 20 of 23.) Instead, Plaintiff argues that a school desegregation case from 1967 infers that the PHRA should be broadly interpreted to provide such equitable relief. (*See* Doc. 19, pp. 16-17 of 23) (citing *Pa. Human Relations Comm'n v. Chester Sch. Dist.*,

11

233 A.2d 290, 302-03 (Pa. 1967)) (holding that the PHRC does have jurisdiction to order a school district to implement desegregation plans).

While the court is unaware of any relevant Pennsylvania case law that recognizes a "mental distress or incapacity" exception to the equitable tolling doctrine, for purposes of the present motion, it is irrelevant. Defendants seek partial judgment on the pleadings as to Counts I and II based on the doctrine of collateral estoppel and not for failure to state a legal claim. Therefore, the court is limited to determining if Plaintiff's equitable tolling argument is identical to an argument raised and integral to the court's judgment in *King I*. The court concludes that it is not.

In fact, the court expressly stated in *King I* that it had not decided if Plaintiff's PHRA and PFEOA discrimination claims were time barred by the statute of limitations and if so, whether or not the statute could be equitably tolled under Pennsylvania law. *See King I*, 2014 WL 3734551 at *15. Instead, the court deferred to Pennsylvania's courts to resolve the matter and rejected any further supplemental jurisdiction over the PHRA and PFEOA claims themselves. *Id.* Despite declining jurisdiction, the court predicted that Plaintiff "would again attempt to toll the applicable limitations, which would require the court to again consider Pennsylvania's statute of limitations and tolling case law." *Id.* This is the precise argument now before the court, but it was not integral or even a part of the

court's summary judgment decision in *King I. See Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 526-27 (3d Cir. 2002) (not allowing party to re-litigate previous Eleventh Amendment immunity holding even though party's regulatory power under a different federal statute was at issue); *see also Raytech Corp.*, 54 F.3d at 191-92 (holding that corporate defendant was precluded from re-litigating its successor liability after an Oregon district court held that defendant engineered a sale of profitable assets to shield them from liability in pending asbestos litigation).

Here, the court has not previously ruled that Plaintiff's PHRA and PFEOA claims were time barred or that the statute of limitations could not be tolled. Furthermore, Plaintiff did not have a "full and fair opportunity to litigate" his state discrimination claims since the court declined to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *See Anspach*, 630 F. Supp. 2d at 491 n.2 ("In as much as neither this Court's nor the Third Circuit's earlier decisions determined the propriety of Plaintiff's claims under the state constitution, we cannot find that the [Plaintiffs] are collaterally estopped from pursuing them now").

For the foregoing reasons, the court finds that the doctrine of collateral estoppel does not preclude Counts I and II, and Defendants' request for judgment on the pleadings as to those counts will be denied.

### B.     Criminal History Record Information Act Claim

CHRIA prescribes procedures for collecting, storing, and disseminating a citizen's criminal history record information. *See* 18 Pa. Cons. Stat. § 9101. The statute applies to the general public as well as "any agency of the Commonwealth or its political subdivisions," including criminal justice agencies such as municipal and university police departments. *See id.* at §§ 9102-03.  Neither party disputes that Mansfield University's police department must comply with CHRIA. Rather, Plaintiff and Defendants dispute whether sexual harassment and assault complaints made to the Police Department are criminal history records or investigative information under the statute.

Defendants argue that CHRIA does not create a private cause of action for failure to create and store an investigative record and, therefore, they are entitled to judgment on the pleadings as to Count VI. (*See* Doc. 18, p. 18 of 24.) Plaintiff argues in response that his sexual harassment and assault report to the Police Department constitutes criminal history record information and, therefore, he can recover damages for a violation of CHRIA. (*See* Doc. 19, pp. 7-11.) Plaintiff also argues, in the alternative, that his sexual harassment report is an original record of entry, similar to a police blotter, and the Police Department's failure to accurately maintain it is a violation of CHRIA.

14

CHRIA defines criminal history record information as "[i]nformation collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom." 18 Pa. Cons. Stat. § 9102. The statute does not govern investigative information, which it defines as "[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information." *Id*. Individuals who have been harmed by a violation of CHRIA may file a civil suit and secure damages, litigation costs, and attorney's fees. *See* 18 Pa. Cons. Stat. § 9183(b)(1)-(2).

A report of an alleged sexual assault on a college campus is an investigative record as it would have been "assembled as a part of an inquiry . . . into a criminal incident or an allegation of criminal wrongdoing." *See id*. at § 9102. However, CHRIA would not apply to any investigative information regarding the alleged assault. *See id*. at §§ 9102, 9105; *see also Dep't of the Auditor Gen. v. Pa. State Police*, 844 A.2d 78, 82 (Pa. Commw. Ct. 2004) ("What distinguishes criminal history record information from investigative information is that the former arises from the initiation of a criminal proceeding, *i.e.*, an arrest, whereas the latter is

composed of information assembled as a result of the performance of an inquiry into a crime that is still under investigation") (internal quotation marks omitted).

Plaintiff concedes that Estep was never arrested or charged and that no criminal proceedings were initiated due to Plaintiff's sexual harassment and assault allegations. Instead, Plaintiff alleges that there *should be* records of Plaintiff's sexual harassment complaints and that this oversight is an ongoing violation of CHRIA. However, this type of conduct does not fall within the ambit of the statute. By its express terms, CHRIA does not create a private cause of action for failing to accurately create and maintain investigative records. Rather, it only mandates that a criminal justice agency "maintain complete and accurate" criminal history record information. *Taha v. Bucks County Pa.*, Civ. No. 12-cv-6867, 2016 WL 1182094, *3 (E.D. Pa. Mar. 28, 2016) (quoting *Doe v. Zappala*, 987 A.2d 190, 194 (Pa. Commw. Ct. 2009)). The statute penalizes a police department for conduct such as illegally releasing criminal history record information or releasing erroneous criminal history record information because such disclosures could harm a person's reputation. CHRIA does not, however, create a cause of action for a criminal justice agency's failure to properly record or investigate a complaint of criminal conduct.

Plaintiff fruitlessly relies upon Section 9111 of CHRIA, which states that "[i]t shall be the duty of every criminal justice agency within the Commonwealth

to maintain complete and accurate criminal history record information and to report such information at such times and in such manner as required by the provisions of this chapter or other applicable statutes." 18 Pa. Cons. Stat. § 9111. By its express terms, this section does not apply to investigative information. As previously stated, Plaintiff's complaints about Estep's sexual misconduct are investigative records and, therefore, the Police Department's failure to maintain such records does not constitute a violation of CHRIA.

Alternatively, Plaintiff argues that his sexual harassment complaints should be considered original records of entry akin to a police blotter. CHRIA defines a police blotter as "[a] chronological listing of arrests, usually documented contemporaneous with the incident, which may include, but is not limited to, the name and address of the individual charged and the alleged offenses." *In re Pittsburgh Citizen Police Review Bd.*, 36 A.3d 631, 637 (Pa. Commw. Ct. 2011). Estep was never arrested or charged for sexually harassing or assaulting Plaintiff. Therefore, as defined by the statute, complaints of misconduct are investigative records and not police blotter material.

Although best practices might dictate that campus police departments keep and maintain investigative records of sexual harassment and other misconduct which occurs on university grounds, CHRIA itself does not compel them to do so. Certainly, the law does not provide a remedy for conduct that it has not prohibited.

To avoid this statutory bar, Plaintiff argues that CHRIA provides broad and unrestricted remedies which the court should interpret to encompass his claim. While CHRIA does not restrict a party's procedural "avenues of relief," *Commonwealth v. M.M.M.*, 779 A.2d 1158, 1163-64 (Pa. Super. Ct. 2001), it does not follow that the court can create new substantive rights and alter the statutory definition of criminal history record information. *See* 1 Pa. Cons. Stat. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit").

Accordingly, the court finds that Plaintiff has no cognizable claim that Defendants violated CHRIA by failing to create and retain records of sexual harassment complaints against Estep. Therefore, he has failed to state a plausible claim for relief, and the court will grant judgment on the pleadings in favor of Defendants as to Count VI.

## IV.      Conclusion

For the reasons stated herein, the court finds that Counts I and II of the complaint are not barred by collateral estoppel, and Defendants are not entitled to judgment on the pleadings as to those counts. Defendants are entitled to judgment on the pleadings as to Count VI, however, because Plaintiff has failed to state a

claim for relief under CHRIA.

      An appropriate order will issue.



                                              s/Sylvia H. Rambo
                                              SYLVIA H. RAMBO
                                                United States District Judge

Dated: November 3, 2016