IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICK KING,** | : | Civil No. 1:15-cv-00159 |
| **Plaintiff,** | : | |
| v. | : | |
| **MANSFIELD UNIVERSITY OF PENNSYLVANIA;** **THE PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION; JOHN HALSTED; CHRISTINE SHEGAN,** | : | |
| **Defendants.** | : | Judge Sylvia H. Rambo |

# **M E M O R A N D U M**

Presently before the court is Plaintiff Patrick King's ("Plaintiff") motion for reconsideration of this court's memorandum and order dated February 28, 2019 (Docs. 54, 55) which granted in part Defendants' Mansfield University of Pennsylvania ("Mansfield"), The Pennsylvania State System of Higher Education ("PSSHE"), John Halsted ("Halsted"), and Christine Shegan ("Shegan"), (collectively, "Defendants") motion for summary judgment (Doc 27). Specifically, the court held that Plaintiff's claims against Halsted in his capacity as president of Mansfield should be dismissed. For the reasons that follow, Plaintiff's motion will be denied.

## I. Background

The relevant facts were set forth in this court's prior memorandum. *See King v. Mansfield Univ. of Pa.*, No. 15-cv-0159, 2019 WL 1003612, *1-2 (M.D. Pa. Feb. 28, 2019). Because the court writes primarily for the parties, the facts need not be reiterated herein. In brief, during the course of Plaintiff's employment and participation in various extracurricular activities at Mansfield, Plaintiff intermittently was sexually harassed by a Mansfield employee, John Estep ("Estep"). Plaintiff alleges that this harassment exacerbated his previously existing depression, which the parties agree qualifies as a disability.

On April 30, 2004, and May 3, 2004, Plaintiff wrote letters directly to Halsted that raised issues regarding allegations that two professors discriminated against him because of his depression, but these letters mentioned neither Estep nor the sexual harassment. Halsted sent a response to Plaintiff and referred him to Molly Bailey, the Chief Human Resources Officer and Director of Affirmative Action ("Bailey"). Plaintiff spoke to Bailey regarding both his issues with the professors and Estep. At the end of April or the beginning of May 2004, Plaintiff reported Estep's misconduct to campus police. Shegan apparently reached out to Bailey to inform her that Plaintiff had complained to campus police about Estep; however, there is no written record of such a complaint. As detailed in this court's prior opinions, the crux of Plaintiff's argument is that his report to Mansfield police was ignored, particularly

by Shegan, the chief of police, and Halsted, the university president, because of his protected status as a gay man, while similar reports made by women students were properly recorded and investigated.

## II.    Legal Standard

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, a party may file a motion for reconsideration to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Cafe, by Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). In this case, Plaintiff argues that this court failed to consider a decision by the Third Circuit that was published between the time briefing was complete in the instant case and the date this court's decision was issued.

## III.   Discussion

Plaintiff argues that this court failed to consider the impact of the Third Circuit's recent decision of *Jutrowski v. Township of Riverdale*, 904 F.3d 280 (3d Cir. 2018), which related to the "personal involvement" requirement in § 1983 cases,

3

in the context of an alleged § 1983 "after the fact conspiracy." In *Jutrowski*, the plaintiff brought excessive force and conspiracy claims against four police officers who were involved in his arrest and detention following a drunk driving accident. The plaintiff crashed his car after consuming several vodka sodas and, during the course of his arrest, inadvertently struck a police officer. After the plaintiff struck the police officer, he was taken to the ground and handcuffed. While he was being handcuffed, one of the officers kicked the plaintiff violently in the face, resulting in injuries that required surgery. The officers' reports were inconsistent, none of them were able to testify as to which officer delivered the blow, and none of their dashcams were activated at the time of the incident. The Third Circuit concluded that these facts, taken together with other omissions and inconsistencies, were sufficient evidence that the police officers may have made a concerted effort to protect the officer who kicked the plaintiff to prevent the plaintiff from bringing a viable excessive force claim, which effectively deprived the plaintiff of his constitutional right of access to the courts.

The Third Circuit, in *Jutrowski*, outlined the analysis a court must engage in where a plaintiff alleges a conspiracy to cover up the deprivation of a constitutional right:

> To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law "reached an understanding" to deprive him of his constitutional rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 [] (1970). Such rights include, of course, those

4

> protected by the Due Process Clause of the Fourteenth Amendment, such as the "right to be heard in an impartial forum," *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 161 (3d Cir. 2010), and the "right of access to the courts," *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). Those rights "assure[] that no person will be denied the opportunity to present to the judiciary allegations concerning violations of . . . constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579 [] (1974).
>
> . . . .
>
> After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, "the rule is clear that" the plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009) (citing *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)). To show agreement, he must demonstrate that "the state actors named as defendants in the [] complaint somehow reached an understanding to deny [the plaintiff] his rights," *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993) . . .

*Jutrowski*, 904 F.3d at 293-95; *see also Murphy v. Middlesex Cty.*, 361 F. Supp. 3d 376, 389 (D.N.J. 2019) (citing *Jutrowski*, 904 F.3d at 295-98) ("The Third Circuit has recognized a theory of a § 1983 conspiracy to cover up constitutional violations, but this occurs when the defendants have conspired to prevent a potential plaintiff from obtaining the information needed to make a valid legal claim, and it implicates the First Amendment right of access to the courts.")

*Jutrowski* may lend additional support to Plaintiff's claim against Chief Shegan, but has little relation to his claim against Halsted.[1] As the court explained

---

[1] Nearly every other case citing *Jutrowski* relative to a conspiracy claim had essentially identical facts to those in *Jutrowski*, *i.e.*, a plaintiff alleges that several officers used excessive force and

5

in its prior opinion, Shegan had direct supervisory authority over the officers who were required to record complaints such as Plaintiffs' sexual assault allegations, Shegan had actual knowledge of the allegations, and Shegan testified that the failure to record the complaint was an aberration in Mansfield Police policy. As the court found, these facts, taken in the light most favorable to Plaintiff, could lead to an inference that Shegan willfully failed to file a proper police report. Halsted, in contrast, was not a direct supervisor of any officer. He was, organizationally, Shegan's superior, although that fact alone would imply that anyone higher in rank than Shegan in the Mansfield system could potentially be held liable for an officer's failure to record. Instead of demonstrating any evidence that Halsted willfully ignored his complaint, Plaintiff presented evidence that Halsted referred the matter to Bailey pursuant to typical practices. Unlike Shegan, there is no testimony that

---

created false reports to hide this fact. *See, e.g.*, *Jacobs v. Cumberland Cnty.,* No. 16-cv-1523, 2019 WL 2354473, *11 (D.N.J. June 4, 2019); *Mrlack v. Ca. Univ. of Pa.*, No. 17-cv-1211, 2019 WL 1790713, *9 (W.D. Pa. Apr. 24, 2019) ("[The p]laintiff must prove that persons acting under color of state law "reached an understanding" to fabricate evidence against the [p]laintiff.").

It is not entirely clear whether *Jutrowski* extends beyond those types of claims. One notable departure from that factual background is found in *Love v. Does*, No. 17-cv-1036, 2019 WL 397001 (D.N.J. Jan. 31, 2019). In *Love*, the plaintiff, a prisoner, brought claims against, *inter alia*, a grievance hearing officer, alleging that she conspired with prison officials to cover up retaliatory actions taken against him for filing certain lawsuits in state court. *Id.* at *2-3, *6. Despite the plaintiffs' assertions that the defendant (1) knew of the alleged retaliatory acts and (2) issued a ruling that resulted in his inability to work while incarcerated and, thus, pay a filing fee for a lawsuit, the district court held that the plaintiff did not state a plausible claim for a conspiracy because it did not allege "a single fact that supports the allegation that [the defendant] specifically agreed with any other state actor or any other individual to deprive Plaintiff of his opportunity to [file a lawsuit]." *Id.* at *9.

Halsted was tasked with ensuring that individual complaints were timely recorded and investigated or that Halsted's actions in this case were "'irregularities' [or] 'distorted' or 'conflicting' accounts that suggest a concerted effort to suppress facts." *Jutrowski*, 904 F.3d at 297 (citation omitted) (noting omissions and contradictions between police reports of the same incident as well as admissions that police officers implicated in the excessive force claim discussed the facts of the arrest with each other). Finding the evidence presented by Plaintiff sufficient to infer Halsted's liability would essentially require a university president to personally investigate each and every student complaint or risk being implicated in a conspiracy. That is not to say that individuals in such a position are wholly insulated from such liability; instead, the court finds only that Plaintiff has failed to adduce any evidence of a "meeting of the minds" to form a conspiracy.

Plaintiff additionally argues that this court failed to address the affidavit of Shari Clarke ("Clarke"), the Vice President of Student Affairs at Mansfield. This argument is not appropriate under the motion for reconsideration standard as Plaintiff merely disagrees with the court's conclusions rather than arguing an intervening change in the law, new evidence, or clear error. The court addressed Clarke's affidavit at length and found that it was pertinent to Shegan's potential liability but did not implicate Halsted. *King*, 2019 WL 1003612, *5-6. Even so, Plaintiff's argument is unpersuasive. Shegan should have reported the complaint to

7

Clarke. Bailey reported to Halsted via email that Shegan had informed Bailey about the complaint. There is no evidence that Halsted was aware at the time that the complaint was not properly recorded or reported via standard police policy. Thus, Halsted would have had no reason to make an additional referral to Clarke at that time.

## IV. Conclusion

For the foregoing reasons, the court finds that the *Jutrowski* decision does not require this court to reconsider its prior grant of summary judgement as to Plaintiff's claim against Halsted. Accordingly, Plaintiff's motion for reconsideration will be denied.

An appropriate order follows.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: June 21, 2019